UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, * | |
| * | |
| v. * | |
| * | |
| NICHOLAS A. BOULAS, * | Criminal Action No. 17-cr-10351-ADB |
| * | |
| Defendant. * | |
| * | |
| * | |
| * | |

# **MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS**

BURROUGHS, D.J.

On November 8, 2017, a grand jury returned a twenty-two-count indictment against Defendant Nicholas A. Boulas ("Boulas"), charging him with: one count of corruptly endeavoring to obstruct the Internal Revenue Service ("IRS") in violation of 26 U.S.C. § 7212(a) (Count One); four counts of aiding and assisting in the preparation and presentation of false corporate tax returns in violation of 26 U.S.C. § 7206(2) (Counts Two through Five); four counts of aiding and assisting in the preparation and presentation of false individual tax returns in violation of 26 U.S.C. § 7206(2) (Counts Six through Nine); eight counts of aiding and assisting in the preparation and presentation of false employment tax returns in violation of 26 U.S.C. § 7206(2) (Counts Ten through Seventeen); four counts of tax evasion in violation of 26 U.S.C. § 7201 (Counts Eighteen through Twenty-One); and one count of structuring to evade currency transaction reports in violation of 31 U.S.C. §§ 5324(a)(3) and 5324(d) and 31 C.F.R. §§ 1010.100, 1010.311, and 1010.313 (Count Twenty-Two). [ECF No. 1 (the "Indictment")]. Currently pending before the Court is Boulas' motion to dismiss Counts One through Seventeen

and Count Twenty-Two of the Indictment. [ECF No. 56]. For the reasons stated below, the motion is DENIED.

I.   BACKGROUND

The Indictment alleges the following facts. Boulas owned and operated Nick's Painting Services, Inc. ("NPS"), which employed crews of painters to provide painting services to residential and commercial clients in the Boston, Massachusetts area. [ECF No. 1 ¶ 2.]. He also owned approximately seven residential rental properties in the Boston, Massachusetts area from which he collected rent from the tenants. [Id. ¶ 3]. In essence, the Indictment charges that Boulas engaged in a scheme to defraud the IRS and the United States Treasury by failing to report business and personal income derived from NPS and the rental properties, paying NPS employees in cash to avoid payroll taxes, and attempting to obstruct and impede an IRS criminal investigation into his conduct. [Id. ¶¶ 8–26].

In support of this scheme, Boulas allegedly instructed a substantial portion of NPS customers to pay for services using checks payable to Boulas, individually. [Id. ¶ 11]. He then deposited and negotiated those checks using a series of personal bank accounts that he maintained at several banks, and he did not disclose the receipts on NPS's tax returns. [Id.]. In an effort to conceal these business receipts from the IRS, when Boulas received customer checks made payable in amounts exceeding $10,000, he frequently deposited a portion of each check and requested payment of the remaining balance in amounts less than $10,000 in order to avoid triggering the filing of currency transaction reports ("CTR"). [Id. ¶ 13].

On or about January 13, 2015, IRS Criminal Investigation Division Special Agents interviewed Boulas at his home and asked him about certain cash and financial transactions involving his personal bank accounts. [Id. ¶ 20]. During the interview, he falsely told the

Special Agents that he had reported all of NPS's income to the IRS. [Id. ¶ 21]. Following the interview, Boulas continued to conceal income generated by NPS, and filed false corporate and personal tax returns for the tax year 2014 that under-reported business receipts and personal income. [Id. ¶¶ 22–24]. The IRS served NPS with a summons for production of corporate records on June 3, 2015. [Id. ¶ 25]. In response, Boulas caused NPS to produce records that substantially understated gross receipts for the years requested. [Id. ¶ 26].

On November 8, 2017, a grand jury returned the Indictment. [ECF No. 1]. On August 17, 2018, Boulas moved to dismiss eighteen of the twenty-two charges against him under Federal Rule of Criminal Procedure 12(b). [ECF No. 56]. The Government filed its opposition to the motion on September 7, 2018, and Boulas filed a reply memorandum on September 17, 2018. [ECF Nos. 62, 67].

## II. STANDARD OF REVIEW

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to make a pretrial motion challenging a defective indictment that fails to state an offense. "An indictment is legally sufficient if it first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." United States v. Laureano-Perez, 797 F.3d 45, 60 (1st Cir. 2015) (citations and quotation marks omitted); see also Fed. R. Crim. P. 7(c). Although an indictment must contain a "plain, concise and definite written statement of the essential facts constituting the offense charged," and "should be specific enough to notify the defendant of the nature of the accusation against him and to apprise the court of the facts alleged," United States v. Berk, 652 F.3d 132, 137–38 (1st Cir. 2011) (citations and quotation marks omitted), the government "need not put forth specific evidence to survive a motion to

3

dismiss." United States v. Ngige, 780 F.3d 497, 502 (1st Cir. 2015) (citing United States v. Stewart, 744 F.3d 17, 21 (1st Cir. 2014)). "When a defendant seeks dismissal of an indictment, courts take the facts alleged in the indictment as true, mindful that 'the question is not whether the government has presented enough evidence to support the charge, but solely whether the allegations in the indictment are sufficient to apprise the defendant of the charged offense.'" Ngige, 780 F.3d at 502 (quoting United States v. Savarese, 686 F.3d 1, 7 (1st Cir. 2012)).

## III. DISCUSSION

### A. Count One: Corruptly Endeavoring to Obstruct the IRS

Count One of the indictment charges Boulas with "corruptly endeavor[ing] to obstruct and impede the due administration of the internal revenue laws" in violation of the "Omnibus Clause" of 26 U.S.C. § 7212(a) by the following means:

a. Cashing and depositing checks constituting NPS business receipts using multiple personal bank accounts maintained at multiple banks;

b. Causing the preparation and filing of false and fraudulent Forms 1120S for NPS that, among other false items, significantly under-reported the gross receipts for the business;

c. Causing the preparation and filing of false and fraudulent Forms 1040 for himself and his wife that, among other false items, substantially under-reported total income for each tax year;

d. Paying NPS employees in cash;

e. · Causing to be filed false and fraudulent Forms 941 that understated the number of NPS employees, the wages paid to employees, and the payroll taxes that were due;

f. After being questioned by an IRS agent, attempting to obstruct and impede the IRS's investigation by, among other means:

i. Causing the filing of false and fraudulent 2014 corporate and individual tax returns that substantially understated business receipts and individual income;

4

> ii. Causing the filing of false and fraudulent Forms 941 that understated (a) the number of NPS employees, (b) the wages paid to employees, and (c) the payroll taxes due;
>
> iii. Altering checks from customers to conceal income;
>
> iv. Providing and causing to be provided false and fraudulent statements to agents; and
>
> v. Attempting to obstruct and impede an IRS summons.

[ECF No. 1 ¶28].

In pertinent part, the Omnibus Clause of Section 7212(a) prohibits "corruptly . . . obstruct[ing] or imped[ing], or endeavor[ing] to obstruct or impede, the due administration of [the Internal Revenue Code]." 26 U.S.C. § 7212(a). The First Circuit has held that to secure a conviction under the Omnibus Clause, the Government must "prove that the defendant[] '1) corruptly, 2) endeavored, 3) to obstruct or impede the due administration of the Internal Revenue laws.'" United States v. Floyd, 740 F.3d 22, 31 (1st Cir. 2014) (quoting United States v. Marek, 548 F.3d 147, 150 (1st Cir. 2008)). In addition, in Marinello v. United States, the Supreme Court recently held that the Government must show that: (1) "there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action"; and (2) "the proceeding was pending at the time the defendant engaged in the obstructive conduct or, at the least, was then reasonably foreseeable by the defendant." 138 S. Ct. 1101, 1109–10 (2018).

Boulas argues that Count One should be dismissed because it fails to allege the existence of any proceeding or investigation, that Boulas knew of any proceeding or investigation, or that there was a nexus between his activities and a particular proceeding or investigation. [ECF No. 57 at 4–6]. He contends that the allegations in the indictment concern acts done in furtherance of ordinary tax preparation and filing—conduct that, in Marinello, the Supreme

Court held cannot support an obstruction charge under the Omnibus Clause. [Id. at 5]. In response, the Government concedes that the allegations contained in Indictment paragraphs 28(a) through (e), which contain general tax fraud allegations, including that Boulas filed false corporate, individual, and employment tax returns, cashed checks to hide NPS income, paid NPS employees in cash, and diverted NPS income to multiple personal accounts, cannot sustain a conviction after Marinello. [ECF No. 62 at 11]. The Government argues, however, that the obstructive acts set forth in paragraphs 20 through 26 and 28(f) of the Indictment, which concern obstructive acts that Boulas allegedly committed during an IRS investigation in order to impede it, are sufficient to state an offense under the Omnibus Clause. [Id. at 10–15].

The Court finds that the allegations contained in paragraphs 20 through 26 and 28(f) of the Indictment, if proven at trial, would be sufficient to satisfy Marinello's requirement that the Government establish the existence of a pending, targeted proceeding and a nexus between that proceeding and the Defendant's obstructive conduct. Specifically, the allegations that Boulas corruptly endeavored to obstruct the administration of the internal revenue code by making false and fraudulent statements to Special Agents during an interview and then, after the interview, attempting to obstruct and impede the IRS's ongoing investigation by causing the filing of fraudulent corporate and individual tax returns, causing the filing of fraudulent Forms 941, altering customer checks to conceal income, and attempting to obstruct and impede an IRS summons arguably show a "relationship in time, causation, or logic" between Boulas' conduct and the IRS investigation as required by Marinello. Marinello, 138 S. Ct. at 1109; [ECF No. 1 at ¶¶ 20–26, 28(f)].

Citing United States v. Aguilar, 515 U.S. 593 (1995), Boulas asserts that an interview with IRS Special Agents and a summons for documents are insufficient to demonstrate the

existence of an investigation or Boulas' knowledge of it. [ECF No. 57 at 6]. Aguilar is distinguishable, however. That case concerned the evidence sufficient to sustain a conviction under the catchall provision of 18 U.S.C. § 1503, which prohibits endeavoring to influence, obstruct, or impede the due administration of justice in connection with a judicial proceeding. Aguilar, 515 U.S. at 598. The respondent was charged with violating the catchall provision by corruptly endeavoring to influence, obstruct, and impede a grand jury investigation by lying to investigating FBI agents. Id. at 597. The Ninth Circuit reversed the respondent's conviction on the Section 1503 charge, and the Supreme Court affirmed, id. at 606, holding that the Government must show a nexus between the defendant's obstructive conduct and a particular judicial proceeding to sustain a conviction under the Section 1503 catchall provision. Id. at 600. The Supreme Court found that the Government failed to establish that nexus because it did not show that the FBI agents acted as an arm of the grand jury or that the grand jury summoned the testimony of the agents. See id. at 600–01 (noting that "uttering false statements to an investigating agent . . . who might or might not testify before a grand jury is not sufficient to make out a violation of the catchall provision of § 1503" because "it cannot be said to have the 'natural and probable effect' of interfering with the due administration of justice"). Aguilar is inapposite because the IRS's investigation of Boulas was not an unforeseeable ancillary proceeding—he was made aware of the agents' investigation when the agents interviewed him at his house and when the IRS served NPS with a summons for corporate records. [ECF No. 1 ¶¶ 22, 25]. Accordingly, Boulas' motion to dismiss Count One is denied.[1]

---

[1] As the Indictment sufficiently alleges a nexus between Boulas' obstructive conduct and the pending IRS investigation, the Court need not address at this time whether Marinello altered the pleading requirements for an Omnibus Clause charge or only addressed the Government's burden of proof at trial.

The Court agrees with Boulas (and the Government) that the allegations contained in Indictment paragraphs 28(a) through (e) cannot sustain an Omnibus Clause conviction in light of Marinello because there is no relationship between those obstructive acts and a targeted administrative action that was pending or reasonably foreseeable at the time that Boulas allegedly committed them. Boulas argues that the Court should dismiss Count One unless the Government strikes those allegations. [ECF No. 57 at 6]. The Government responds that the allegations contained in paragraphs 28(a) through (e) are admissible in this case to prove other charges in the Indictment, and contends that the appropriate remedy is to redact them for the jury and provide instructions consistent with Marinello. [ECF No. 62 at 13]. "Under Federal Rule of Criminal Procedure 7(d), the defendant may move to strike surplusage from the indictment. . . . to protect the defendant 'against immaterial or irrelevant allegations in an indictment, . . . which may . . . be prejudicial.'" United States v. Lewis, 40 F.3d 1325, 1346 (1st Cir. 1994) (quoting Fed. R. Crim. P. 7(d), advisory committee note); United States v. Fahey, 769 F.2d 829, 841–42 (1st Cir.1985)). "This decision rests in the sound discretion of the district court." Lewis, 40 F.3d at 1346 (citation omitted). Given that the allegations in paragraphs 28(a) through (e) are irrelevant to Count One and are averred elsewhere in the Indictment, the Court orders that they be redacted from the Indictment and that the jury not see or be told about this surplusage.

### B. Counts Two Through Seventeen: Aiding and Assisting in the Preparation and Presentation of False Tax Returns

Counts Two through Seventeen of the Indictment charge Boulas with aiding, assisting, procuring, counseling, and advising in the preparation and presentation of false personal tax returns, corporate tax returns, and employment tax returns in violation of 26 U.S.C. § 7206(2). [ECF No. 1 at ¶¶ 14–15, 19, 29–34]. According to the Indictment, Boulas caused the preparation and filing of: false and fraudulent personal tax returns that understated Boulas' flow-through

income from NPS and concealed rental income; false and fraudulent Forms 1120S on behalf of NPS that substantially understated its business receipts; and false and fraudulent employment tax returns on Form 941 that understated the number of NPS employees, wages paid, and payroll taxes. [ECF No. 1 at ¶¶ 14–15, 19].

Section 7206(2) provides that:

> Any person who . . . [w]illfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document, which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim, or document . . . shall be guilty of a felony.

26 U.S.C. § 7206(2) (2012). "An offense under 26 U.S.C. § 7206(2) has three essential elements: (1) the defendant aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return; (2) the return was fraudulent or false as to a material matter; and (3) the act of the defendant was willful." United States v. Ali, 616 F.3d 745, 755 (8th Cir. 2010) (citation omitted).

Boulas argues that Counts Six through Nine of the Indictment must be dismissed because Section 7206(2) does not criminalize acts that aid and assist in the preparation of an individual's own false tax returns. [ECF No. 57 at 6–10; see also id. at 12 (asserting that "there are no instances" in prior case law "where a [§ 7206(2)] defendant and the taxpayer were one and the same")]. Similarly, Boulas contends that he cannot be convicted of aiding and assisting in the filing of false corporate tax returns or employment tax returns on behalf of NPS under Counts Two through Five and Counts Ten through Seventeen of the Indictment because NPS, as an S corporation, does not have an identity separate from Boulas. [Id. at 10–13]. Boulas further asserts that Counts Ten through Seventeen must be dismissed because the Indictment does not allege that employees of NPS filed false tax returns. [Id. at 13]. In support of his arguments,

9

Boulas relies on a string of cases demonstrating that Section 7206(2) is frequently used to prosecute tax preparers and officers of C corporations but, notably, Boulas does not cite a single case holding that the conduct charged in Counts Two through Seventeen is beyond the scope of the statute. [See id. at 6–13].

In response, the Government argues that the plain text of Section 7602 is not limited to any class of defendant, but extends to "any person" who aids or assists in preparing and presenting a false return, including where, as here, a taxpayer willfully causes his or her authorized agent to file false returns. [ECF No 62 at 17]. Contrary to Boulas' representation that there is no case law support for charging a taxpayer under Section 7206(2) in connection with his or her own false tax returns, the Government points to several decisions by the Fourth and Ninth Circuits affirming Section 7206(2) convictions against the underlying taxpayer. [Id. at 18–20 (citing United States v. Dean, 64 F.3d 660, 1995 WL 493006, at *1–2 (4th Cir. Aug. 18, 1995) (upholding prosecution of taxpayer under Section 7206(2) for assisting in the preparation of his false return); United States v. Hirschfeld, 964 F.2d 318, 321 (4th Cir. 1992) (same); United States v. Greger, 716 F.2d 1275, 1277–78 (9th Cir. 1983) (same))]. In addition, the Government contends that although Boulas pays taxes on NPS's corporate income, NPS is a legal entity distinct from Boulas that is independently obligated to file tax forms and is a separate taxpayer for employment tax purposes. [ECF No. 62 at 21]. In his reply memorandum, Boulas offers no response to the Government's arguments or cited case law. [See ECF No. 67].

The Court agrees with the Fourth Circuit that the text of Section 7206(2) "is quite broad," Dean, 1995 WL 493006, at *2, and reaches an individual who assists in the preparation of his or her own false return by encompassing anyone who "[w]illfully aids or assists in, or procures . . . the preparation or presentation . . . of a [false] return . . . whether or not such falsity . . . is with

the knowledge or consent of the person authorized . . . to present such return." 26 U.S.C. § 7206(2); see also Greger, 716 F.2d at 1277 (Section 7206(2) "was clearly intended to encompass" a defendant who assisted in the preparation of his own false tax return). For the same reason, the Court rejects Boulas' argument that Counts Two through Five and Counts Ten through Seventeen must fail because NPS, for tax purposes, is Boulas, himself, and not a separate entity. Finally, Boulas is incorrect that Counts Ten through Seventeen must be dismissed because the Indictment does not allege that employees of NPS filed false tax returns. Those Counts sufficiently charge the three essential elements of a Section 7206(2) offense: (1) that Boulas aided, assisted in, procured, counseled, and advised the preparation and presentation of eight quarterly federal tax returns on Forms 941 for NPS; (2) those returns were false and fraudulent as to material matters; and (3) the acts of Boulas were willful. [ECF No. 1 at 12–13]; see Ali, 616 F.3d at 755. Boulas' attempt to introduce a fourth element—that employees of NPS also filed false individual tax returns—runs afoul of the statutory language and must fail. Accordingly, the Court denies Boulas' motion to dismiss Counts Two through Seventeen of the Indictment.

    **C.**    **Count Twenty-Two: Structuring Monetary Transactions**

Count Twenty-Two of the Indictment charges Boulas with structuring financial transactions to evade currency transaction reports in connection with twenty-one separate transactions. [ECF No. 1 ¶¶ 37–38]. Essentially, Count Twenty-Two alleges that instead of cashing the twenty-one identified checks for their full amount, and thereby triggering the banks' reporting requirements, Boulas partially cashed each check in an amount less than $10,000 and deposited the remainder of the checks. [See id. ¶¶ 11–13, 38].

11

"The Bank Secrecy Act requires domestic banks to report any transactions involving more than $10,000 in cash (such reports are known as cash transaction reports, or 'CTR[s]')." United States v. Morales-Rodriguez, 467 F.3d 1, 10 (1st Cir. 2006) (citing 31 U.S.C. § 5313). Specifically, under 31 U.S.C. § 5313(a), "[w]hen a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency . . . in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution . . . shall file a report on the transaction at the time and in the way the Secretary prescribes." 31 U.S.C. § 5313(a) (2012). The corresponding regulation, 31 C.F.R. § 1010.311, then provides that "[e]ach financial institution . . . shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000." 31 C.F.R. § 1010.311 (2018).

In turn, 31 U.S.C. § 5324(a)(3) criminalizes, *inter alia*, structuring financial transactions to evade CTR requirements, providing that "[n]o person shall, for the purpose of evading the reporting requirements of section 5313(a) . . . or any regulation prescribed under any such section . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 U.S.C. § 5324(a)(3) (2012). Section 1010.314(c) of the Code of Federal Regulations similarly provides that "[n]o person shall for the purpose of evading the transactions in currency reporting requirements of this chapter with respect to such transaction . . . [s]tructure (as that term is defined in § 1010.100(xx)) or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions." 31 C.F.R. § 1010.314(c) (2018). 31 C.F.R. § 1010.100(xx) defines "structuring" as follows:

> For purposes of § 1010.314, a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more *transactions in currency*, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under §§ 1010.311, 1010.313, 1020.315, 1021.311 and 1021.313 of this chapter. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, or the conduct of a transaction, or series of currency transactions at or below $10,000. The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.

31 C.F.R. § 1010.100(xx)) (emphasis added) (2018). A "transaction in currency" is a "transaction involving the physical transfer of currency from one person to another." 31 C.F.R. § 1010.100(bbb)(2) (2018). "A transaction which is a transfer of funds by means of bank check, bank draft, wire transfer, or other written order, and which does not include the physical transfer of currency, is not a transaction in currency for this purpose." Id.

Boulas argues that Count Twenty-Two must be dismissed because the charged conduct does not constitute "structuring" a "transaction in currency." [ECF No. 57 at 14–19]. In particular, Boulas contends that the acts of depositing and cashing the checks identified in the Indictment are not "currency transactions" under 31 C.F.R. § 1010.100(bbb)(2). [Id. at 17–18]. Boulas is correct that 31 U.S.C. § 5324(a)(3) requires a "transaction in currency," see 31 C.F.R. §§ 1010.100(bbb)(2), 1010.311, but he misconstrues the transactions set forth in the Indictment. The Indictment charges that Boulas presented customer checks in amounts greater than $10,000 to bank tellers, exchanged those checks for cash in amounts less than $10,000, and deposited the balance into his account. [ECF No. 1 ¶¶ 12–13]. The Court finds that such transactions involve "the physical transfer of currency from one person to another" and, accordingly, are "transactions in currency" under 31 C.F.R. § 1010.100(bbb)(2).[2] See Morales-Rodriguez, 467

---

[2] The bank qualifies as a "person" for purposes of 31 C.F.R. § 1010.100(bbb)(2) and 31 U.S.C. § 5324(a)(3). See 31 C.F.R. § 1010.100(mm) (2018) (defining "person" as "[a]n individual, a

F.3d at 11–12, 16 (affirming conviction for structuring monetary transactions and rejecting defendant's argument that the transactions at issue were not covered under Section 5324(a)(3) because they involved checks and not cash, noting that defendant's "argument fails because many of the transactions in question involved cashing checks, such that [defendant]—or someone sent on his behalf—would routinely exit the bank with thousands of dollars in cash"). Boulas' motion to dismiss is denied on this basis.

Boulas also argues the Count Twenty-Two should be dismissed because receiving currency in an amount less than $10,000 by cashing customer checks, as charged in the Indictment, is not "structuring" under 31 C.F.R. § 1010.100(xx). [ECF No. 57 at 15, 18–19]. He contends that structuring can only occur by breaking up a "single sum of currency exceeding $10,000 into smaller sums," whereas the currency that Boulas received in the identified transactions was for amounts less than $10,000. [Id. at 15, 19]. In support of this proposition, Boulas relies on <u>Ratzlaf v. United States</u>, in which the Supreme Court observed that "[i]t is illegal to 'structure' transactions—*i.e.*, to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution's reporting requirement." 510 U.S. 136, 136 (1994) (citation omitted).

The Government responds that breaking up a sum of currency exceeding $10,000 is not the only way to violate Section 5324(a)(3). [ECF No. 64 at 24–27]. It notes that 31 C.F.R. § 1010.100(xx) provides that structuring "***includes, but is not limited to***, the breaking down of a single sum of currency exceeding $10,000 into smaller sums." 31 C.F.R. § 1010.100(xx) (emphasis added). The Government also points to <u>United States v. Sperrazza</u>, 804 F.3d 1113

---

corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, an Indian Tribe . . . and all entities cognizable as legal personalities").

(11th Cir. 2015), in which the Eleventh Circuit rejected the same argument that Boulas makes here. The Eleventh Circuit reviewed the Ratzlaf decision and concluded:

> We do not read this introductory sentence as holding there is only one way to structure a transaction. Although breaking up a sum larger than $10,000 was the form of structuring at issue in Ratzlaf, nothing in the Court's opinion indicates it intended to provide an exclusive definition of the term.

Sperrazza, 804 F.3d at 1123.

The Court agrees with the Government that the definition of structuring offered in Ratzlaf is not exclusive, and that Boulas "confuses a sufficient condition for a necessary condition." United States v. Sweeney, 611 F.3d 459, 471 (8th Cir. 2010). Here, Boulas concedes that, had he received in cash the full amount of the checks identified in Count Twenty-Two, the bank would have been obligated to file a CTR for these transactions. [ECF No. 57 at 18–19; ECF No. 67 at 3; see also ECF No. 67 at 2 (acknowledging that "receipt of cash is a currency transaction")]. He maintains, however, that the identified transactions are not "transactions in currency" because he did not possess an amount of "currency" in excess of $10,000 and, as such, the regulatory definition of "structuring" cannot apply. The Court disagrees. Nothing in Section 5324(a)(3) or the Treasury regulations limit structuring to scenarios where one or more defendants divides up a single sum of currency exceeding $10,000 into smaller sums, and the plain text of 31 C.F.R. § 1010.100(xx) unambiguously provides that structuring "includes, but is not limited to" that practice. See Sweeney, 611 F.3d at 471 ("While breaking up a single cash transaction that exceeds the $10,000 reporting threshold into two or more separate transactions is one way of committing the offense of structuring a transaction, it is not the only way."). The Indictment charges that Boulas structured twenty-one transactions by depositing a portion of customer checks and requesting the remaining balances in cash amounts below the $10,000 threshold with the intent to avoid triggering the CTR filings. [ECF No. 1 ¶¶ 13, 38]. The Court

finds that the charged acts fall squarely within the definition of "structuring" set forth in 31 C.F.R. § 1010.100(xx), and the motion to dismiss is denied.[3]

In the alternative, Boulas argues that the Court must dismiss Count Twenty-Two because 31 U.S.C. § 5324(a)(3) is unconstitutionally vague. [ECF No. 57 at 19–22]. Boulas contends that if the conduct charged constitutes structuring under Section 5324(a)(3), then the statute fails to give adequate notice to people of common intelligence and permits arbitrary enforcement. [Id.]. Boulas suggests that if the Government's construction of Section 5324 is correct, then any person who cashes a personal check for an amount in excess of $10,000, receives any amount of cash under $10,000, and deposits the balance would be subject to criminal prosecution. [Id. at 20].

"The Due Process Clause 'mandates that, before any person is held responsible for violation of the criminal laws of this country, the conduct for which he is held accountable be prohibited with sufficient specificity to forewarn of the proscription of said conduct.'" United States v. Lachman, 387 F.3d 42, 56 (1st Cir. 2004) (quoting United States v. Anzalone, 766 F.2d 676, 678 (1st Cir. 1985)). "The 'void for vagueness doctrine' addresses at least two discrete due process concerns: 'first, . . . regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.'" United States v. Zhen Zhou Wu, 711 F.3d 1, 13

---

[3] Boulas also argues that the logical extension of the Government's position is that the Government could charge anyone who deposits a check in an amount greater than $10,000 and receives back any amount under $10,000 with criminal structuring. [ECF No. 57 at 19]. As discussed supra at 12, this argument is without merit because "one violates § 5324(a)(3) only if one structures a transaction for the purpose of evading the reporting requirement." United States v. Sperrazza, 804 F.3d 1113, 1124 (11th Cir. 2015) (rejecting defendant's argument that the indictment "criminalize[d] going to the bank too often" because the "key allegation in the indictment is not that [defendant] engaged in a series of transactions under $10,000, but that he did so 'for the purpose of evading the reporting requirements'").

(1st Cir. 2013) (quoting FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012)). "Outside the First Amendment context," a district court examines "'whether a statute is vague as applied to *the particular facts at issue*,' for a defendant 'who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" Zhen Zhou Wu, 711 F.3d at 15 (quoting Holder v. Humanitarian Law Project, 561 U.S. 1, 18–19 (2010)). Accordingly, the Court need only determine whether Boulas had fair notice that Section 5324(a)(3) and the relevant regulations proscribed the conduct charged in the Indictment.

Boulas' constitutional challenge generally repeats his arguments for dismissal under Rule 12(b). He claims that if the charged transactions can be characterized as "currency transactions under $10,000," then the law fails to give adequate notice that such transactions are proscribed by Section 5324(a)(3). [ECF No. 57 at 20]. This challenge fails because, as discussed supra at 12–14, Section 5324(a)(3) and the applicable regulations, by their clear terms, prohibit the conduct charged in the Indictment and, accordingly, adequately put Boulas on notice that such transactions constitute criminal structuring. Furthermore, in this Circuit and elsewhere, case law clearly establishes that transactions in currency involving personal checks are not excepted from the Section 5324's ambit. See Morales-Rodriguez, 467 F.3d at 11–12 (rejecting defendant's argument that the transactions in currency were not covered under Section 5324 because they involved cashing checks); United States v. Kats, No. 12-cr-738-MWF, 2013 WL 12204557, at *6 (C.D. Cal. May 21, 2013) (holding that withdrawals by cashier's checks constituted "transactions in currency"); see also United States v. Noske, 117 F.3d 1053, 1059 (8th Cir. 1997) (holding Section 5324(a) is not void for vagueness); United States v. Jackson, 983 F.2d 757, 765 (7th Cir. 1993) (same); United States v. Pierce, No. 90-1455, 1990 WL 201394, at *4 (6th Cir. Dec. 13,

17

1990) (same); United States v. Maroun, 739 F. Supp. 684, 689–91 (D. Mass. 1990) (same). Finally, Boulas' concern that any person who unwittingly deposits a check in excess of $10,000 while receiving cash back in an amount less than $10,000 would be subject to criminal prosecution is unfounded. Section 5324(a)(3) unambiguously states that a person can only be convicted if the Government proves that he or she intended to evade the CTR filing requirements, and this "scienter requirement ameliorates any vagueness concerns." United States v. Nieves-Castano, 480 F.3d 597, 603–04 (1st Cir. 2007) (citing Hill v. Colorado, 530 U.S. 703, 732 (2000)).

Thus, because Section 5324(a)(3) both gave fair notice to Boulas and adequately guards against arbitrary and discriminatory enforcement, Boulas' motion to dismiss Count Twenty-Two is denied.

**IV.   CONCLUSION**

For the foregoing reasons, Boulas' motion to dismiss [ECF No. 56] is DENIED.

**SO ORDERED.**

December 19, 2018                                                      /s/ Allison D. Burroughs
                                                                       ALLISON D. BURROUGHS
                                                                       U.S. DISTRICT JUDGE